IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02271-CMA-NRN

TIFFANY GRAYS,

Plaintiff,

v.

GRANICUS, LLC,
JESSICA RICHEY, and
CHRIS DOWNARD,

Defendants.

---

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT
(DKT. ##17, 20, & 21)**

---

**N. Reid Neureiter
United States Magistrate Judge**

Now before the Court are Defendants Jessica Richey, Chris Downard, and

Granicus, LLC's ("Granicus," and collectively "Defendants") Motions to Dismiss

Plaintiff's Complaint. (Dkt. ##17, 20, & 21.) Plaintiff Tiffany Grays filed a Response to

the Motions on November 27, 2018, (Dkt. #25), to which Defendants filed a Reply. (Dkt.

#26.) On December 14, 2018, the Court permitted Ms. Grays to file a Surreply. (Dkt.

#31.) The Motions have been referred to me by Judge Christine M. Arguello. (Dkt. ##18

& 22.) Finally, the Court heard oral argument on the Motions on November 20, 2018.

(Dkt. #24.) The Court has taken judicial notice of the Court's file, considered the

applicable Federal Rules of Civil Procedure and case law, and now, being fully

informed, makes the following recommendation.

# I. BACKGROUND

## a. Ms. Grays' Allegations

The following allegations are taken from Ms. Grays' Amended Complaint (Dkt. ##6 & 6-1) and assumed to be true for the purposes of a motion to dismiss.[1]

Ms. Grays is an Information Technology ("IT") specialist with over 12 years of experience and is a "registered Certified Scrum Master." (Dkt. #6-1 ¶ 7.) Granicus hired Ms. Grays, who is African American, as a "Product Owner" on January 2, 2018. (*Id.* ¶ 1.) According to Granicus' job posting, a "Product Owner" is "responsible gathering business requirements from cross-functional stakeholders, then guiding the vision of what needs to be built and conveying that vision to their agile team and business partners." (*Id.* ¶ 11.) Defendant Richey was Granicus' Program Manager and Ms. Grays' direct boss. (*Id.* ¶ 9.) Defendant Downard was the Director of Software Development but had no organizational authority over Ms. Grays. (*Id.* ¶ 10.)

According to Ms. Grays, only seven percent of Granicus' workforce was African American, and there were no other African Americans at or above her position level. (*Id.* ¶ 12.)

Ms. Grays difficulties with Granicus began before her first day of work. She alleges that the Human Resources ("HR") department was plagued by poor communication, and she describes at some length issues regarding the signing of an

---

[1] Defendants state that the Amended Complaint that was served on them is different than the one filed with the Court. (Dkt. ##17, 20, & 21 at 1 n.1.) Defendants were served with the document located at Dkt. #6-1, but not Dkt. #6. The document located at Dkt. #6 is the District Court's Pro Se General Complaint Form, and it lists Ms. Grays' claims for relief. These claims are thoroughly explained in Dkt. #6-1, although Dkt. #6-1 does not contain a recitation of the damages sought. However, this discrepancy does not alter the Court's analysis.

Employee Rights and Covenants Agreement ("ERCA"). (*Id.* ¶¶ 19-58.) These communication problems persisted after Ms. Grays started on the job. She clashed with individuals on her development team over what she perceived to be their unprofessional demeanor and took over work from an engineer she felt was ineffective. (*Id.* ¶¶ 60, 62-65.) Ms. Grays "also began to have conflict" with Product Manager Matt McFarland about their respective roles in the company, and McFarland's "lack of awareness and input" in the product they were working on. (*Id.* ¶¶ 66, 68.) Ms. Grays believes that Defendant Downard essentially took McFarland's side in this dispute. (*Id.* ¶ 69.) After unsuccessful attempts to resolve the issue with McFarland, Defendant Richey sent Ms. Grays a 30-60-90-day outline, which provided performance goals that Ms. Grays was expected to attain. (*Id.* at ¶ 76.)

On March 8, 2018, Ms. Grays was invited to a team lunch the next day. (*Id.* at ¶ 78.) Ms. Grays was upset because everyone else knew about the lunch the day before, and she would not be able to make it because she would be working from home that day. (*Id.*) She felt the slight was intentional. (*Id.*) She then sent a Granicus executive, Nick Harris, an email with her concerns. (*Id.* ¶ 79.) Ms. Grays turned down Harris' offer to reschedule the lunch. (*Id.*)

Ms. Grays continued to have issues with Defendant Downard, whom she felt was overstepping his role, despite not being her supervisor. (*Id.* ¶ 80.) Downard informed Ms. Grays that Defendant Richey asked him to watch her, and admitted that he was having difficulty with Ms. Grays because he was used to people just doing what he told them to do. (*Id.*)

During her 60-day review with Richey, Ms. Grays was told she was doing well except for her "communication issue." (*Id.* ¶ 81.) Ms. Grays thought she had resolved these problems (even though she still felt McFarland was "ineffective"), and when she asked Richey for examples, Richey brought up the email to Harris. (*Id.*) Despite Richey's claim that Harris sent her the email, Ms. Grays believes that it was Downard who forwarded it on, which constituted "further proof of the conspiracy[] and improper supervision [he] was enacting against" Ms. Grays. (*Id.*) Ms. Grays also notes that she was not provided with an updated discussion list prior to the 60-day meeting. (*Id.* ¶ 82.)

On March 15, 2018, Richey scheduled an impromptu meeting with Ms. Grays. (*Id.* ¶ 83.) Richey told Ms. Grays that, contrary to a statement made during the 60-day meeting, she would not do a write-up of Ms. Grays' communication problems, and it was up to Ms. Grays to figure out where she needs to improve. (*Id.*) As Ms. Grays did not feel she did anything wrong, she believed she was being set up to fail. (*Id.*)

On March 20, 2018, 77 days after she started, Ms. Grays' employment with Granicus was terminated. Given the company-wide communication problems, she believes that the "fact [her] communication issues were pointed out and used as a point to move someone's agenda to remove Ms. Grays from the company, shows that Plaintiff was being targeted and discriminated against." (*Id.* ¶ 86.) Essentially, she believes she was held to different and higher standards than her white counterparts. (*Id.*)

After her termination, Ms. Grays filed a charge with the Equal Employment Opportunity Commission ("EEOC") against Granicus alleging retaliation and discrimination on the basis of color, race, and sex. (*Id.* ¶ 7.) Ms. Grays received a right

to sue letter from the EEOC on June 2, 2018. (*Id.*) A month later, Ms. Grays initiated a lawsuit in Colorado state court (the "State Court Action") that included claims for declaratory relief as to the validity of the ERCA, outrageous conduct, breach of fiduciary duty, negligence, and intentional infliction of emotional distress against Granicus and four Granicus HR employees, none of whom are parties to this action. (Dkt. #20-3.) [2] The State Court Action was dismissed on the defendants' motion on August 5, 2018.

Ms. Grays asserts nine claims for relief: (1) a Title VII claim; (2) a 42 U.S.C. § 1985(3) conspiracy claim; (3) a 42 U.S.C. § 1981 claim; (4) wrongful termination; (5) outrageous conduct; (6) breach of contract/promissory estoppel; [3] (7) blacklisting; (8) slander; and (9) breach of fiduciary duty.[4] Defendants seek dismissal of all claims under Rule 12(b)(6).

**b. Defendants' Motions to Dismiss**

Defendants argue that Ms. Grays' Amended Complaint fails as a matter of law and should be dismissed for multiple reasons.

---

[2] Defendant Downard attaches as exhibits to his motion to dismiss Ms. Grays' state court complaint and the order dismissing the State Court Action entered by Denver District Judge Martin E. Egelhoff. (Dkt. ##20-3 & 20-4.) As noted below, the Court can take judicial notice of public records without converting the subject motions to dismiss into motions for summary judgment. *See, e.g., Van Woudenberg v. Gibson,* 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001) (When considering a motion to dismiss, "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record.").

[3] A claim for breach of contract is separate and distinct than one for promissory estoppel. The Court construes Ms. Grays' Amended Complaint to assert a claim for promissory estoppel.

[4] Ms. Grays Amended Complaint also references the mishandling of her employment file, but that seems to be directed at HR employees who are not parties to this lawsuit, and so will not be discussed further. Similarly, Ms. Grays' responsive filings raise for the first time First Amendment claims that were not contained in the Amended Complaint and will not be addressed here.

As an initial matter, Defendants note that it not entirely clear which claims are brought against which Defendants. This implicates the pleading standards set forth in Rule 8. *See* Fed. R. Civ. P. 8(a) (requiring a complaint to "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief"). *See also Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (explaining that to state a cognizable claim in federal court that complies with Rule 8, a plaintiff "must describe briefly, plainly, and adequately the specific legal right allegedly violated and all relevant facts that support each claim, which includes explaining what each named defendant did to him; when the defendant did it; and how the defendant's action harmed him"). The requirements of Rule 8(a) guarantee "that defendants enjoy fair notice of what the claims against them are and the grounds upon which they rest." *TV Commc'ns Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991), *aff'd*, 964 F.2d 1022 (10th Cir. 1992). The liberal pleading standard for unrepresented litigants does not override a pro se plaintiff's responsibility to provide a simple and concise statement of his claims and the specific conduct that gives rise to each asserted claim. *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994).

Ms. Grays' Amended Complaint does not specify which claims are asserted against which Defendant. Thus, Defendants were left to guess which claims were brought against whom. Defendant Richey assumed that the 42 U.S.C. § 1985(3), promissory estoppel, and breach of fiduciary duty claims were asserted against her in her individual capacity. (Dkt. #17 at 2.) Defendant Downard assumed that Ms. Grays asserted only her § 1985(3) claim against him individually. (Dkt. #20 at 2.) Defendant Granicus, for its part, did not respond to the § 1985(3) or breach of fiduciary duty claim.

(Dkt. #21 at 2 n.2.) Ms. Grays' Response (Dkt. #25) provided little clarification. The Court will therefore adopt Defendants' framing of the relevant claims.

Defendants further argue that all of Ms. Grays' claims are barred under the doctrine of res judicata, now generally referred to as the doctrine of "claim preclusion," due to the dismissal of the State Court Action. Defendants additionally contend that all the claims can be dismissed under Rule 12(b)(6).

## II. LEGAL STANDARDS

### a. Pro Se Plaintiff

Ms. Grays is proceeding pro se. The Court, therefore, "review[s] [her] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle her to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**b. Failure to State a Claim Upon Which Relief Can Be Granted**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In assessing a motion to dismiss under Rule 12(b)(6), the usual rule is that a court should consider no evidence beyond the pleadings. *See Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1216 (10th Cir.2007). "If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado*, 493 F.3d at 1216 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). *See also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)("[i]f a document is referenced in and central to a complaint, a court need not convert the motion but may consider that document on a motion to dismiss."). In addition, "facts subject to judicial

notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006).

## III. ANLYSIS

### a. Res Judicata/Claim Preclusion

Defendants argue that claim preclusion bars Mr. Grays' Amended Complaint because she is seeking to relitigate issues that were or could have been brought in the State Court Action. "Under res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the prior action." *Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1467 (10th Cir. 1993) (citing *N. Nat. Gas v. Grounds*, 931 F.2d 678, 681 (10th Cir. 1991) (internal quotation marks omitted)). Claim preclusion requires that four elements be satisfied: (1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; (3) identity of the cause of action in both suits; and (4) a full and fair opportunity to litigate the claim in the prior suit. *Johnson v. Dep't of Veterans Affairs*, 611 F. App'x 496, 497 (10th Cir. 2015). The Court will address each in turn.

#### 1. Final Judgment on the Merits

Motions filed under Fed. R. Civ. P. 12(b)(6) and those for failure to state a claim under Colo. R. Civ. P. 12(b)(5) are similar because both "result in a determination on the merits at an early stage of plaintiff's case . . .." *Tidwell ex rel. Tidwell v. City & Cty. of Denver*, 83 P.3d 75, 86 (Colo. 2003). Dismissal under Colo. R. Civ. P 12(b)(5) is dismissal on the merits and is tantamount to a final judgment on the merits. *See Pohl v.*

*US Bank*, No. 14-cv-02292-PAB-MJW, 2016 WL 1178278, at *6-7 (D. Colo. Mar. 28, 2016) (holding claim preclusion applied where a state court's prior dismissal for failure to state a claim under Colo. R. Civ. P. 12(b)(5) constituted a decision on the merits), *aff'd*, 859 F.3d 1226 (10th Cir. 2017). When "the court fails to state expressly that a dismissal is without prejudice, it operates as a dismissal with prejudice and an adjudication upon the merits of the petition then before the court." *People v. D.A.K.*, 596 P.2d 747, 749 (Colo. 1979). *See also Streu v. City of Colo. Springs ex rel. Colo. Springs Util.*, 239 P.3d 1264, 1267 ("Unless the court otherwise specifies, a dismissal under Rule 41(b) ordinarily operates as an adjudication on the merits.").

Ms. Grays' State Court Action was dismissed under Colo. R. Civ. P. 12(b)(5). (Dkt. #20-3.) The State Court did not express whether the dismissal was with or without prejudice. (*Id.*) Accordingly, the dismissal operated as a final judgment on the merits. Therefore, the Court finds that the first element of claim preclusion is met.

### 2. Identity of Parties

Claim preclusion "is applicable only to parties to the first suit or their privies." *Satasky*, 7 F.3d at 1468. It is undisputed that Granicus was a defendant in the State Court Action. Defendants Richey and Downard argue that claim preclusion should bar Ms. Grays' claims against them because they are in privity with Granicus.

Where, as here, Defendants were not a party to the prior action, application of claim preclusion requires privity between the defendant and a party to the prior adjudication. *See Manka v. Martin*, 614 P.2d 875, 879 (Colo. 1980). "Parties are in privity when the party in the litigation has adequately represented the interests of the non-party, or when there is a substantial identity of interests between a party and a non-

party such that the non-party is 'virtually represented' in the litigation." *Benson v. Town of Nunn, Colo.*, 52 F. Supp. 2d 1210, 1214 (D. Colo. 1999).

Defendants argue that other courts have invoked claim preclusion where the parties who seek its benefit are related by vicarious liability to the defendant in the prior lawsuit, as may be the case in the context of the employee-employer relationship. For example, in *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279 (5th Cir. 1989), the Fifth Circuit set forth the practical basis for applying claim preclusion in this context:

> Where a plaintiff has sued parties in serial litigation over the same transaction; where plaintiff chose the original forum and had the opportunity to raise all its claims relating to the disputed transaction in the first action; where there was a "special relationship" between the defendants in each action, if not complete identity of parties; and where although the prior action was concluded, the plaintiff's later suit continued to seek essentially similar relief—the courts have denied the plaintiff a second bite at the apple.

871 F.2d at 1288.

While this reasoning may be sound, Defendants point to no Tenth Circuit authority that addresses this particular issue. Moreover, the Court recognizes that "[t]he determination of identity between litigants for the purpose of establishing privity is a factual question." *Sanchez v. Miller*, No. 15-cv-01615-REB-MEH, 2016 WL 675816, at *2 (D. Colo. Feb. 19, 2016) (quoting *Lowell Staats Mining Co. v. Philadelphia Electric Co.*, 878 F.2d 1271, 1276 (10th Cir. 1989). Reading Ms. Grays' allegations liberally, and after reviewing the relevant documents from the State Court Action, the Court determines that, at this early state of the litigation, Defendants Richey and Brownard cannot be said, as a matter law, to be in privity with Granicus, as required for the identity of parties element of a claim preclusion defense. The individual defendants in the State Court Action were sued due to alleged irregularities with how the ECRA was

executed and the manner in which her employment file was maintained. As the Court construes her Amended Complaint, Ms. Grays in not seeking "essentially similar relief" against Richey and Downard in the present case.

### 3. Identity of Cause of Action

As to the third element, the Colorado Supreme Court has held that "[t]he best and most accurate test as to whether a former judgment is a bar in subsequent proceedings . . . is whether the same evidence would sustain both, and if it would the two actions are the same, and this is true, although the two actions are different in form." *Foster v. Plock*, 394 P.3d 1119,1127 (Colo. 2017) (quoting *Farmers High Line Canal & Reservoir Co. v. City of Golden*, 975 P.2d 189, 203 (Colo. 1999)). "The issue of whether a claim or cause of action is the same as one previously decided 'is determined by the injury for which relief is demanded, and not the legal theory on which the person asserting the claims relies.'" *Benson*, 52 F. Supp. 2d at 1213 (quoting *Wilkinson v. Pitkin County Bd. of County Comm'rs*, 142 F.3d 1319, 1322 (10th Cir. 1998)). Claim preclusion also "bars claims to enforce remedies which the plaintiff could have, but did not, seek in the former action." *Id.* Thus, parties cannot defeat claim preclusion by simply alleging new legal theories. *Id.*

The Tenth Circuit has adopted a transactional test to determine whether the identity of the cause of action is the same in both suits. *Hatch v. Boulder Town Council*, 471 F. 3d 1142, 1149 (10th Cir. 2006) (citing *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999)). "The transactional approach provides that a claim arising out of the same 'transaction, or series of connected transactions' as a previous suit, which concluded in a valid and final judgment, is precluded." *Id.* To determine "what

constitutes the same transaction or series of transactions," the Court "giv[es] weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* Finally, an individual's employment may constitute a "transaction" if the claims in both suits were predicated upon that employment. *See Clark v. Haas Grp., Inc.*, 953 F.2d 1235, 1239 (10th Cir. 1992) (plaintiff's Equal Pay Act and Age Discrimination in Employment Act claims against former employer were precluded when a prior Fair Labor Standards Act action against that employer had been dismissed).

Here, the Court finds that Ms. Grays' claims against Granicus in this case arise out of the same transaction as the State Court Action, namely, her employment relationship with Granicus.

First, Ms. Grays' outrageous conduct claims in both cases are functionally identical. (*Compare* Dkt. #6-1 ¶¶ 110-12 *with* Dkt. #20-3 ¶¶ 75-76.) Therefore, this claim can be disposed of without further analysis.

Second, Ms. Grays' Title VII claims could have been brought in the State Court Action.[5] According to her Amended Complaint, Ms. Grays filed her EEOC charge on May 17, 2018, and received the EEOC's right to sue on June 2, 2018. (Dkt. #6-1 ¶7.) Ms. Grays concedes that she received the right to sue letter before she initiated the State Court Action. (Dkt. #25 at 9.) She could have asserted her employment

---

[5]  To the extent that Ms. Grays purports to assert Title VII claims against Defendants Richey and Downard, those claims should be dismissed. *See Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir.1996) ("Under Title VII . . . individual capacity suits are inappropriate. The relief granted under Title VII is against the employer, not individual employees whose action would constitute a violation of the Act.").

discrimination claims in the first suit, and they would have been heard and determined. The underlying facts are related in time, space, origin, and motivation, as they were predicated on Ms. Grays' employment relationship with Granicus. Accordingly, this claim satisfies the third element of the claim preclusion analysis.

For the same reasons, Ms. Grays' § 1981, wrongful termination, blacklisting, and slander claims could also have been asserted against Granicus in the State Court Action. Ms. Grays was aware of the facts giving rise to these claims when she sued Granicus in state court. Because the claims all arise out of her employment with Granicus, they form a convenient trial unit with Ms. Grays' state court claims. Allowing Ms. Grays to pursue these claims in federal court would invite "precisely the sort of piecemeal litigation, unnecessary expense, and waste of judicial resources that the doctrine of res judicata is designed to prevent." *Clark*, 953 F.2d at 1240 (citation omitted).

Accordingly, the Court finds that the subject matter in both claims against Granicus are the same, and therefore the third element of claim preclusion is met.

### 4. Full and Fair Opportunity to Litigate

The final element of claim preclusion is whether "the party had a full and fair opportunity to litigate the claim[s] in the prior suit." *Nwosun v. Gen. Mills Rest., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997). This inquiry focuses on "whether there were significant procedural limitations in the prior proceedings, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." *Salguero v. City of Clovis*, 366 F.3d 1168, 1174 (10th Cir. 2004). "State proceedings need do no more than satisfy the minimum

procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 481 (1982).

An examination of the record demonstrates that Ms. Grays did receive a full and fair opportunity to litigate her claims. She was allowed at least one opportunity to amend her complaint. (Dkt. #20-3.) She was given a chance to respond to the motion to dismiss. (Dkt. #20-4.) As far as the Court can tell, she did not appeal state court's decision; she instead filed the instant suit in federal court. Thus, the Court finds that the fourth element of claim preclusion has been satisfied.

For these reasons, the Court recommends that Ms. Grays' Title VII, 42 U.S.C. § 1981, wrongful termination, outrageous conduct, blacklisting, and slander claims against Granicus be dismissed pursuant to the doctrine of claim preclusion.

### b. 42 U.S.C. § 1985(3) Conspiracy Claim

Ms. Grays alleges that Defendants Richey and Downard conspired to violate her "right to equal employment" pursuant to 42 U.S.C. § 1985(3).

As Judge Arguello recently explained:

> 42 U.S.C. § 1985 protects an individual from conspiracies to deprive him or her of "the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To state a claim under 42 U.S.C. § 1985(3), a plaintiff must show the following: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of laws, or of equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Griffin v. Breckenridge*, 403 U.S. 88, 91, 91 S. Ct. 1790, 29 L.Ed.2d 338 (1971). 42 U.S.C. § 1985(3) has been interpreted to apply to private conspiracies. *Id.* at 101, 91 S. Ct. 1790. In addition,

the statute has been interpreted to require "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Id.* at 102, 91 S. Ct. 1790. "The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Id.* The Supreme Court has interpreted 42 U.S.C. § 1985(3) to protect the right to be free from racial discrimination, among other rights. *Life Ins. Co. of North Am. v. Reichardt*, 591 F.2d 499, 503 (9th Cir. 1979) (citing *Griffin*, 403 U.S. at 97, 91 S. Ct. 1790).

*Creek Red Nation, LLC v. Jeffco Midget Football Ass'n, Inc.*, 175 F. Supp. 3d 1290, 1295 (D. Colo. 2016).

Even assuming Ms. Grays adequately claims Richey and Barnard conspired to have her fired, Ms. Grays does not plausibly allege that this conspiracy was in any way related to her race. Although Ms. Grays references the lack of diversity at Granicus, that alone does not support an inference that these specific individual Defendants were motivated by any racial or discriminatory animus. The closest Ms. Grays comes is when she alleges:

> The fact that Plaintiffs' [sic] communication issues were pointed out and used as a point to move someone's agenda to remove Ms. Grays from the company, shows that Plaintiff was being targeted and discriminated against. Plaintiff was being held to a higher standard than all other counterparts, whom were all Caucasian. Downard had an agenda to get Ms. Grays removed and played a critical role in Plaintiffs' removal.

(Dkt. #6-1 ¶ 86.)

The Court finds that, under *Iqbal*, Ms. Grays' allegations are mere legal conclusions and bare assertions, and therefore are not entitled to the assumption of truth. Accordingly, the Court recommends that Ms. Grays' 42 U.S.C. § 1985(3) claim be dismissed.

### c. Promissory Estoppel

Ms. Grays alleges that at the 60-day review meeting, Defendant Richey promised her that "all would be okay" if Ms. Grays corrected her communication issues. (Dkt. #6-1 ¶ 113.) Ms. Grays alleges that she relied on this promise, but that Richey "failed to perform causing the unjust termination" of Ms. Grays' employment. (*Id.* ¶ 114.)

The elements of a promissory estoppel claim are: (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promise; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice. *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1226–27 (D. Colo. 2011) (citing *Nelson v. Elway*, 908 P.2d 102, 110 (Colo. 1995)).

Ms. Grays' Amended Complaint fails to establish the first element. The Court finds that Richey's alleged statement that "all would be okay" constitutes, at most, a vague promise that no reasonable person would rely on. *See Haynes v. Level 3 Commc'ns, LLC.,* 167 Fed. Appx. 712, 715 (10th Cir. 2006) (unpublished) (recognizing that "[a]ssurances of fair treatment or mere vague assurances are unenforceable" in the context of promissory estoppel claims under Colorado law) (internal quotation marks and citations omitted). Accordingly, the promissory estoppel claim should be dismissed.

### d. Breach of Fiduciary Duty

Ms. Grays alleges that Defendant Richey "was acting as a fiduciary of the Plaintiff, with respect to the Plaintiff's position and employment at Granicus, LLC." (Dkt. # 6-1 ¶¶ 120-21.) This claim is deficient.

Under Colorado law, a claim for a breach of fiduciary duty has the following four elements: 1) that the defendant was acting as a fiduciary of the plaintiff; 2) that the defendant breached a fiduciary duty to the plaintiff; 3) that the plaintiff incurred damages; and 4) that the defendant's breach of fiduciary duty was a cause of the plaintiff's damages. *Sewell v. Great N. Ins. Co.*, 535 F.3d 1166, 1172 (10th Cir. 2008) (citing *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993)).

As to the first element, a fiduciary relationship exists between two persons "when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Accident & Injury Medical Specialists, P.C. v. Mintz*, 279 P.3d 658, 663 (Colo. 2012). "Beyond fiduciary relationships that are established by law (e.g. attorney-client, doctor-patient), fiduciary duties may arise based on the particular circumstances of the relationship between the parties, such as where one party occupied a superior position relative to another and assumed a duty to act in the dependent party's best interest." *SGS Acquisition Co. Ltd. v. Linsley*, No. 16-cv-02486-MSK-KLM, 2018 WL 4698614, at *6 (D. Colo. Sept. 30, 2018) (unpublished). *See also Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 517-18 (Colo. 1986) (where one party had extensive influence and control over the other's interests). "The hallmark of these relationships is that one party has 'extensive influence and control over the other's interests,' or has received 'special trust and confidence' from and occupies a position to exercise influence over the other." *Id.* (quoting *Rocky Mountain Exploration, Inc. v. Davis Graham & Stubbs LLP*, 420 P.3d 223, 235 (Colo. 2018).

Ms. Grays fails to allege that Richey was acting as Ms. Grays' fiduciary. There is no allegation that a fiduciary relationship was established by law. Richey was merely Ms. Grays' supervisor. This type of common supervisor/subordinate relationship is not one that creates any type of "special trust and confidence" between the parties. Richey was not tasked to act in Ms. Grays' best interest, nor did she exercise "substantial control" or exert "extensive influence" over Ms. Grays. Accordingly, Ms. Grays fails to state a breach of fiduciary duty claim against Defendant Richey, and this claim should be dismissed.

## IV. RECOMMENDATION

**WHEREFORE**, for the foregoing reasons, it is hereby **RECOMMENDED** that

- Defendants' Motions to Dismiss Plaintiff's Complaint (Dkt. ##17, 20, & 21) be **GRANTED**; and

- Plaintiff's Amended Complaint (Dkt. ##6 & 6-1) be **DISMISSED**.


**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.**

*Makin v. Colorado Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999);

*Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

BY THE COURT

Date: December 26, 2018
      Denver, Colorado

N. Reid Neureiter
United States Magistrate Judge